THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AVRAHAM EISENBERG,**<br><br>    **Plaintiff,**<br>    v.<br><br>**NUMERIS LTD., et al.,**<br><br>    **Defendants.** | **Civil No. 22-1325 (ADC)** |

### ORDER

On July 6, 2022, plaintiff Avraham Eisenberg ("Eisenberg") filed suit against Numeris Ltd. ("Numeris"), Sasha Ivanov ("Ivanov") and ten unnamed defendants (altogether, "defendants"). **ECF No. 1.** Therein, Eisenberg alleges that he deposited over $14 million worth of a cryptocurrency stablecoin[1] into Vires Finance, a decentralized cryptocurrency finance protocol[2] housed in the Waves blockchain ecosystem[3] that is purportedly run by the defendants. Eisenberg maintains that, through knavish and fraudulent means, defendants both devalued his investment and have kept him from being able to withdraw his assets. He sued for damages and equitable relief.

---

[1] A stablecoin is a cryptocurrency asset that tracks the value of a non-digital currency or commodity. For example, some notable stablecoins are "pegged" to fiat currencies such as the U.S. Dollar or the Euro. *See* President's Working Group on Financial Markets, *Report on Stablecoins*, pg. 3 *et seq.*, Nov. 2021, view at URL: https://home.treasury.gov/system/files/136/StableCoinReport_Nov1_508.pdf.

[2] Those who deposit cryptocurrency assets into the protocol do so chiefly for one of two reasons: (1) deposited assets may be loaned out by the protocol to borrowers who post their own cryptocurrency assets as collateral and pay interest on the loaned amount, thereby netting a portion of the profits to depositors; or (2) deposited assets may be used as collateral to open loan positions. *See generally* **ECF 1**.

[3] A blockchain ecosystem typically refers to a grouping of digital elements capable of interacting with each other in a specific digital environment. *See* Rusnek, *et al.*, *Blockchain for a Traceable, Circular Textile Supply Chain: A Requirements Approach,* 4 SQP VOL. 21, NO. 1 at 9, 2018.

Now, he moves for a temporary restraining order ("TRO"), to serve summons via alternate means, and to expedite discovery. **ECF No. 2**. For the reasons below, Eisenberg's motion is **GRANTED IN PART and DENIED IN PART.**

### I. The TRO

To determine whether to issue a TRO, courts apply the same analysis used to evaluate a request for a preliminary injunction. *Bourgoin v. Sebelius*, 928 F. Supp.2d 258, 267 (D. Me. 2013). Accordingly, when deciding motions for a TRO, courts weigh four factors: "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (citing *Jean* v. *Massachusetts State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007).

Eisenberg requests three forms of injunctive relief, which the Court will now address.

*1. Freezing the Bridge*

Eisenberg first requests that the Court freeze the Waves bridge. Per Eisenberg's own allegations, the Waves bridge connects the Waves blockchain ecosystem to the widely popular Ethereum blockchain ecosystem. It is the only portal through which assets may be transferred into and out of the Waves ecosystem – the sole entrance to and exit from the Waves ecosystem.[4]

---

[4] Assets that "pass" through the bridge remain locked within a specific address in the Ethereum blockchain while their value is replicated in the Waves ecosystem. **ECF No 2-2** at 4.

Shutter that gate and the Waves ecosystem is effectively isolated – all the assets (belonging to an unalleged but presumably large amount of people) currently housed there become trapped and any Waves based business endeavor that requires interaction with the digital-world-at-large comes to a screeching halt.

Nevertheless, Eisenberg urges the Court to freeze the Waves bridge, arguing that such drastic measures are necessary to prevent defendants from ushering Eisenberg's assets through the bridge to the Ethereum blockchain ecosystem where they would likely be routed and rerouted until gone with the digital wind in a matter of seconds. But the balance of hardships does not weigh in his favor. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) (vacating a preliminary injunction because the balance of hardships tipped in favor of the defendant).

Indeed, freezing the Waves bridge would mean, for one, dealing a devastating blow to the defendants in this case by way of bringing Vires Finance to its knees. To boot, it would maroon the assets of every person who has transferred assets into the Waves ecosystem and hurt other business enterprises operating in that ecosystem. The Court therefore finds that the harm dealt to the defendants, to third parties who do business in the Waves ecosystem, and to the Waves ecosystem itself would outweigh the benefits that Eisenberg would gleam from freezing the Waves bridge. *See LaBelle Chevrolet, LLC v. Gen. Motors, LLC*, 705 F. Supp. 2d 97, 101 (D. Mass. 2010) (*citing Long Term Care Pharm. Alliance v. Ferguson*, 362 F.3d 50, 60 (1st Cir.2004) (stating that the impact on non-parties is a "proper concern in granting or denying an

injunction")). Such damage would go far beyond maintaining the status quo and any remedy that Eisenberg could eventually become entitled to.

For those reasons, Eisenberg's request to freeze the Waves bridge is **DENIED**.

*2. Freezing Eisenberg's and Ivanov's Assets*

Next, Eisenberg requests that his own assets (which he alleges are currently held in Vires Finance) and Ivanov's assets (which he alleges are currently held in private accounts outside of the Waves ecosystem) be frozen pending the adjudication of this case. His requests, however, are unavailing.

While freezing assets via preliminary injunctive relief is generally disfavored, Eisenberg has pointed to competent caselaw that stands for the proposition that freezing assets may be appropriate when plaintiffs sue for equitable, rather than legal, remedies, and there is a demonstrated danger that the assets may be dissipated or lost before the suit may be resolved. *See e.g. Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 53 (1st Cir. 1986). However, while Eisenberg's motion for a TRO is chock-full of assertions that the assets in question here will be lost, the sworn allegations and statements currently before the Court do not portray the same picture. **ECF Nos. 2, 2-1** and **2-2.** Therefore, Eisenberg has failed to show a likelihood that the funds in question will be dissipated by the time litigation concludes – this is fatal to his request for a freezing of assets.

Eisenberg attempts to save the day by citing *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992). In that case, the District

Court relied on the "the international aspect" of defendant's business to find a danger that the funds in question be hidden. *Id.* However, the Court is unpersuaded by that non-binding holding, and refuses to find that enterprises operating outside of the United States are prone to stealing and hiding assets.

For these reasons, Eisenberg's request to freeze his own and Ivanov's assets is **DENIED.**[5]

## II.   Serving Summons via Alternate Means

Eisenberg seeks permission to serve summons upon the defendants via alternate means: e-mail and summons by publication.

He maintains the summons by e-mail is proper under Fed. R. Civ. P. 4(f). However, he skips over the fact that service in such a manner is often foreclosed by the Hague Convention. *See Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020). Where as here, Eisenberg has yet to plead the citizenship or residence of the defendants, the Court cannot authorize service of summons via e-mail.

Eisenberg also requests that he be allowed to serve summons upon domestic defendants residing outside of Puerto Rico via publication. However, Eisenberg must comply with the procedures set forth in Rule 4.6 of the Puerto Rico Rules of Civil Procedure for each defendant he wishes to serve by publication – and at this stage, he has not.

For these reasons, Eisenberg's request to serve summons via alternate means is **DENIED**.

---

[5] The Court also struggles to see the relationship between freezing Ivanov's assets and the equitable remedies sought in Eisenberg's complaint. *See* **ECF No. 1** at 12-24. Plus, the balance of hardships would likely tilt in Ivanov's favor.

### III. Expedited Discovery

Finally, Eisenberg requests expedited discovery to obtain the identities of the unnamed defendants. The Court, in its discretion, will grant Eisenberg's request, albeit with a stern warning. Eisenberg is only authorized to carry out limited discovery efforts narrowly tailored to run to ground the identities of the unnamed defendants alluded to in the complaint. Any discovery effort that exceeds the scope of this order will be met with steep sanctions up to and including monetary penalties and dismissal.

### IV. Conclusion

For the reasons above, Eisenberg's motion at **ECF No. 2** is **GRANTED IN PART and DENIED IN PART**. The requests for a TRO and request to serve summons via alternate means are **DENIED**. However, Eisenberg's request to expedite discovery is **GRANTED** but only within the parameters afore set forth by the Court.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 10th day of August, 2022.

                                                **S/AIDA M. DELGADO-COLÓN**
                                                **United States District Judge**